# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
May 8, 2007 Session

## STATE OF TENNESSEE V. LIA BONDS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-00926    W. Mark Ward, Judge**

---

**No. W2006-01943-CCA-R3-CD  - Filed November 2, 2007**

---

Appellant, Lia Bonds, was indicted for second degree murder.  After a jury trial, Appellant was convicted as charged and sentenced to twenty years in incarceration.  Appellant appeals the judgment of the trial court, arguing: (1) the evidence was insufficient to support her conviction; (2) the trial court erred by refusing to charge the jury with the lesser included offenses of reckless endangerment and assault; (3) the prosecutor's rebuttal argument was improper; and (4) her sentence was excessive. After a thorough review of the record, we determine that the evidence was sufficient to support the conviction and that Appellant waived the issue regarding the impropriety of the prosecutor's rebuttal argument.  Further, we determine that the trial court erred by failing to instruct the jury on the lesser included offenses of misdemeanor reckless endangerment and assault, but that the error was harmless.  However, because Appellant was improperly sentenced under the 2005 amendments to the 1989 Sentencing Act where the record contained no waiver of ex post facto provisions, we remand the matter to the trial court for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed in Part;**
**Sentence Vacated; Remanded for Resentencing.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Lia Bonds

Robert E. Cooper, Jr., Attorney General & Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

<u>Factual Background</u>

In October of 2004, the victim, Ashley Webster, was nineteen years old and lived with her boyfriend, Rico Allen in an apartment at 1852 Keltner Street in Memphis. Before Mr. Allen started dating the victim, he was in a romantic relationship with Appellant. The relationship between Appellant and Mr. Allen continued while Mr. Allen was living with and dating the victim. At some point, the victim became aware of the continuing nature of the relationship between Appellant and Mr. Allen. The two women started "communicating" with each other in a hostile manner, including making threatening phone calls to each other. Appellant had even gone so far as to accuse Mr. Allen of burglarizing her home, and Mr. Allen was arrested based on Appellant's claims to police. The accusations eventually resulted in dismissed charges. While Mr. Allen was in jail on the charges, Appellant left a copy of Mr. Allen's "rap sheet" on the victim's car windshield with the words, "stupid bitch you [sic] next" written on it.

On the morning of October 28, 2004, Mr. Allen woke up and left the apartment while the victim was still sleeping. After leaving the apartment, Mr. Allen went to hang out at a friend's house. Appellant's car pulled up outside the friend's house. When Appellant parked, she noticed that Mr. Allen had the victim's car. At that time, Appellant and Mr. Allen were involved in a paternity dispute regarding Appellant's son. Despite the dispute, Appellant wanted to find out if Mr. Allen planned on going to the hospital to see her son, who was having surgery that day. When Mr.

Allen informed Appellant that he would not be going to the hospital, Appellant left. According to Appellant, Mr. Allen had previously told her that he would come to the hospital. Appellant was "mad" and felt "intimated . . . as well as jealous" when she discovered that Mr. Allen was driving the victim's car. According to Appellant, Mr. Allen told her that "the relationship between him and her [the victim] was over and . . . that they no longer communicated."

Sometime later that day, Appellant went over to the victim's house to "let her know that [she] had just been with her man." Appellant knocked on the door, and the victim asked who was at the door. When Appellant did not respond, the victim opened the door. Appellant told the victim "your nigga' going to get your windows busted out your car."

According to Appellant, who testified at trial, the victim tried to push Appellant out of the house. Appellant would not leave so the victim hit Appellant with something she was holding in her hand, possibly a cell phone. The women "began to fight," then the victim went to the kitchen. Appellant was still standing in the living room at the time. The living room was closer to the front door than the kitchen. Appellant could have retreated through the front door, but was afraid that the victim would have "proceeded behind" her out of the front door. Once in the kitchen, the victim reached for a pair of scissors that were located in the butcher block knife holder on the kitchen counter. The entire knife block fell to the floor, scattering knives everywhere. The victim began to stab and cut Appellant with the scissors, first on the arms and then on her head.

At some point during the fight, the victim dropped the scissors. Appellant grabbed the "closest knife" which "happened to be the butcher knife" that was approximately eight inches long. The women were fighting face to face, holding each other by the hair. Appellant tried to stab the victim in a "spot to where [she] felt would not be detrimental to her life," but agreed at trial that stabbing someone with an eight-inch butcher knife could result in death. Appellant stabbed the victim with "two very quick jabs" in the right side of the victim's neck, "not with excessive force but just enough to cut her so that she can let me go." The victim let go of Appellant. Appellant turned around and ran out of the house, taking the knife with her. Appellant was cut several times and had a bite mark on the inside of her right arm, opposite her elbow. Appellant denied that it came about because she had her arm around the victim's neck. When she left the victim's apartment, Appellant went straight home and threw the knife in the bushes.[1]

Darian Howery, a sanitation engineer with Waste Management, was picking up trash at the victim's apartment complex that same day. Between 10 a.m. and noon, he saw Appellant, armed with a butcher knife, run away from an apartment and get into a car. Appellant had blood dripping down her neck. Mr. Howery then saw a body lying in the grass. He notified the apartment manager, who called the police.

When Appellant arrived at her house, she called the police to get medical care for her wounds and report that she had been assaulted by the victim. She felt that calling the police would be faster than driving herself to the hospital. When Officer Dionnie Smith arrived at Appellant's apartment

---

[1]The knife was later located by the police when Appellant told them where she had thrown the knife.

in response to her report of assault, Appellant told him that she was outside a store and was attacked by the victim, who was armed with a knife.[2] Appellant did not appear to be in any kind of mortal danger, despite having several cuts and scratches on her neck and arms. Appellant informed the officer that she got the knife away from the victim, swung at her, then drove home to call the police.

Further investigation by the officer revealed that there was no store at the street address given by Appellant. Officer Smith also learned that the victim was found dead outside her apartment. Appellant was arrested and taken for medical treatment, but was not notified at that time about the victim's death.

Investigator Lezley Currin met with Appellant after her arrest. Appellant initially repeated the story she told to Officer Smith, that she was assaulted by the victim with a box cutter or knife outside a grocery store. When Investigator Currin informed Appellant that the victim was dead, Appellant broke down and stated that she did not mean to kill the victim. Appellant insisted that she went to Appellant's house to make her mad and that the victim asked her to leave, but Appellant forced her way inside the apartment. Once inside the apartment, Appellant told police that the women began fighting, with the victim striking the first blow. Appellant maintained that they ended up in the kitchen where the victim grabbed a pair of scissors and began stabbing her in the back, head, and arms. Appellant stated that the women were fighting face to face when Appellant picked up a knife with her right hand and stabbed the victim twice in the right side of the neck.

---

[2]Appellant maintained at trial that she told the officer that the victim was armed with box cutters.

Officer Charles Cathey processed the crime scene at the victim's apartment. He located blood on the porch steps and noticed that the living room was in disarray, suggesting that a struggle had taken place. There was blood all over the living room furniture, as well as on the floor and ceiling of the kitchen. The butcher block knife holder was on the floor. Although it had spaces for fourteen implements, there were only seven knives and a pair of scissors in the kitchen at the time. The blood trail led from the victim's apartment to another apartment. Blood was also found in Appellant's car on the driver's seat, as well as on the bumper and back light. The blood on the scissors belonged to both Appellant and the victim, however the blood on the knife belonged only to the victim.

The victim died as a result of a two-track stab wound in her neck. The wound was a little longer than two inches in length and was about five inches deep. The victim also had cuts on both of her hands, which were consistent with trying to grab the knife during the attack. The neck wounds severed both the carotid artery and the jugular vein and punctured the victim's right lung. The victim bled to death, but could have remained conscious for a few minutes after she was stabbed.

Appellant was indicted in January of 2005 by the Shelby County Grand Jury for the second degree murder of the victim. The trial of the matter occurred on May 15-19, 2006. At the conclusion of the jury trial, Appellant was convicted of second degree murder as charged in the indictment. At a sentencing hearing, the trial court sentenced Appellant to twenty years in incarceration. Appellant filed a timely motion for new trial, which was denied by the trial court. On appeal, Appellant presents the following issues for our review: (1) whether the evidence was

insufficient to support her conviction; (2) whether the trial court erred by refusing to charge the jury with the lesser included offenses of reckless endangerment and assault; (3) whether the prosecutor's rebuttal argument was improper; and (4) whether Appellant's sentence was excessive.

*Analysis*

*Sufficiency of the Evidence*

Appellant complains on appeal that the evidence was insufficient to overcome her claim of self-defense and, in the alternative, that the evidence was insufficient to sustain the conviction for second degree murder. Specifically, Appellant states that the State failed to present any evidence that "negated the claim of self-defense" and failed to prove that the killing of the victim was a "knowing killing" because even though Appellant admittedly stabbed the victim, her actions "were not such that she was aware that the conduct was reasonable [sic] certain to cause the death [of the victim]." The State disagrees, arguing that Appellant could not assert that she was "reasonably entitled to use deadly force to protect herself" from the victim, who was unarmed when Appellant stabbed her. Moreover, the State argues that Appellant made no showing that the victim used unlawful force. Finally, the State contends that the proof is in "stark contrast" to Appellant's assertion that she did not knowingly kill the victim.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and

"approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another. T.C.A. §§ 39-13-201, -210(a). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to

cause the result. T.C.A. § 39-11-302(b). Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence. *State v. Inlow*, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000); *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

At trial, Appellant relied on a defense of self-defense to justify the stabbing of the victim. Tennessee defines self-defense as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

T.C.A. § 39-11-611(a). Self-defense requires a reasonable belief that "force is immediately necessary to protect against the other's use or attempted use of unlawful force" and that there was an "imminent danger of death or serious bodily injury" to the defendant. T.C.A. § 39-11-611(a). When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is

well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

It is obvious in this case that the jury chose to reject Appellant's claim of self-defense. The testimony concerning the events immediately prior to Appellant's attack on the victim came only from Appellant, who testified that she had previously threatened the victim and went to the victim's home that day to provoke her and make her "mad." When Appellant arrived at the victim's home, she forced her way into the house and continued to fight with the victim even after the victim retreated to the kitchen. When the victim retreated to the kitchen, Appellant admitted that she had ample time to escape through the front door, but chose to remain in the apartment. Appellant testified that she stabbed the victim in the neck after the victim had already dropped the scissors that she was using as a weapon. Therefore, by Appellant's own admission, the victim was unarmed at the time she was stabbed by Appellant. In the context of self-defense, it is only permissible to use force to "protect against the other's use or attempted use of *unlawful force*." T.C.A. § 39-11-611(a) (emphasis added). Appellant made no argument at trial that the victim was using unlawful force at the time Appellant stabbed her in the neck with an eight-inch knife blade. In fact, to the contrary, the victim was entitled to use deadly force against Appellant to protect herself when Appellant forcibly entered her home. *See* T.C.A. § 39-11-611(b). It was within the jury's purview to reject the

self-defense theory. *See State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Further, Appellant's argument is basically an argument about the credibility of the witnesses. Again, the jury is entrusted to resolve questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence. *Pruett*, 788 S.W.2d at 561.

Also in regards to the sufficiency of the evidence for her second degree murder conviction, Appellant contends that there was no proof offered at trial that she "knowingly" killed the victim. Viewing the evidence in the light most favorable to the State, we determine that there was sufficient evidence to convict Appellant of the knowing killing of the victim. While Appellant asserted at trial that she meant to stab the victim in a way that would not be "detrimental to her life," Appellant also admitted that she knew that a stab wound to the leg or arm would have posed less risk of death than a stab wound to the neck. Further, Appellant testified that she quickly "jabbed" the victim twice with the knife, while the testimony of the medical examiner revealed that the knife wounds were five inches deep and several inches wide. The jury could infer from the location of the wounds and the nature of the injuries that Appellant reasonably knew that inflicting this type of wound would result in the victim's death. *See State v. Robert Ervin*, No. W2000-01035-CCA-R3-CD, 2001 WL 91907 (Tenn. Crim. App., at Jackson, Jan. 31, 2001) (determining that the jury could properly infer the knowing nature of killing based on the use of a deadly weapon, the number of wounds inflicted, the seriousness of the wounds, and the defendant's past history of conflict with the victim). Thus, the evidence was sufficient to sustain a verdict for second degree murder. This issue is without merit.

*Rebuttal Argument*


Next, Appellant complains that the State made improper remarks during closing argument. Specifically, Appellant argues that the State misstated the law by telling the "jury they should convict [Appellant] based on the 'A-C-T-S' and not the knowledge of [Appellant]." Because of the improper argument and the failure of the trial court to take curative measures, Appellant argues that the argument resulted in plain error. The State, on the other hand, argues that "the intent of the State's rebuttal argument was precisely to argue that [sic] the jury could infer that the defendant intended to bring about the eventual result of her conduct by considering the nature of the crime."


In general, the scope of closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). Trial judges in turn are accorded wide discretion in their control of those arguments, *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995), and this discretion will not be interfered with on appeal in the absence of abuse thereof. *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law. *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). Thus, the State must not engage in argument designed to inflame the jurors and should restrict its comments to matters properly in evidence at trial. *State v. Hall*, 976 S.W.2d 121, 158 (Tenn. 1998).

When a reviewing court finds improper argument, *State v. Philpott*, 882 S.W.2d 394 (Tenn. Crim. App. 1994), sets out five factors to determine whether a prosecutor's improper conduct could have affected the verdict to the "prejudice of the defendant." *Id.* at 408. The factors are: (1) the conduct complained of in light of the facts and circumstances of the case; (2) the curative measures undertaken; (3) the intent of the prosecutor in making the improper remarks; (4) the cumulative effect of the improper conduct and any other errors in the record; and, (5) the relative strength or weakness of the case. *Id.* (citing *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see also State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

In the case herein, the following occurred during the prosecutor's rebuttal argument:

As far as offenses as charged and the elements, I told you at the beginning of this trial I would have to prove to you that [Appellant] was guilty of a knowing killing, the knowing itself - - the knowing aspect of that doesn't apply to what she may have known or not known later on. The knowing aspect of that element applies to the act itself, the act itself, the stabbing itself.

The first question, the very first question I asked [Appellant], you would agree with me, wouldn't you, that stabbing somebody could kill them. Yes. That stabbing them in the torso would increase the risk of that death versus stabbing them in the arm or the leg. Yes. They say that they didn't try to cut her in the arms or the legs, that they tried - - she tried to cut her in the back. How is that . . . to them. I don't understand.

-13-

That's what they have to say because that's what the evidence was, is that she was stabbed in the neck. She's locked into that statement since day one. She couldn't change her story now, could she?

She said that she intentionally - - that she still had her - - how did she put it, her sense and reason while she was stabbing at [the victim]. When I asked why, why would you not choose to cut her hand, you know, cut the hand that's cutting - - you know, holding on to you if you want loose? Well, I still had my sense about me. And that's why you stabbed her in the torso instead of her arms or her leg? Yeah.

The knowing element applies to the act itself. That's on page 16 [of the jury instructions], the defendant unlawfully killed the alleged victim and that the defendant acted knowingly. The knowing element I think is defined later on, on page 20. Knowingly means that a person acts, acts, A-C-T-S, with an awareness that his conduct is reasonably certain to cause the death of the alleged victim. That doesn't mean she intentionally killed her, no. To stab somebody either in the back like she thought she had done or in the neck like she actually did do is a knowing act. She actually said it was an intentional act. She did that intentionally versus slicing her across the thigh or across the hand that was holding it or the other arm. And keep in mind that this girl is unarmed at the time, the victim.

The State has correctly noted that Appellant failed to lodge a contemporaneous objection to any of the comments about which she now complains on appeal. Typically, the failure to object to the statement at trial results in a waiver on appeal of any complaint concerning the prosecutor's comments. Tenn. R. App. P. 36(a); *State v. Thornton*, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). Thus, if this Court is to review the claims of prosecutorial misconduct we must do so through the process of "plain error" review embodied in Tennessee Rule of Criminal Procedure 52(b) which provides:

An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.[3]

This Court has, in its discretion, from time to time reviewed allegations of prosecutorial misconduct as "plain error" even in the absence of a contemporaneous objection. *See, e.g., State v. Marshall*, 870 S.W.2d 532 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Carter*, 988 S.W.2d 145 (Tenn. 1999) (determining in absence of objection that prosecutor's jury argument was not plain error); *State v. Butler*, 795 S.W.2d 680 (Tenn. Crim. App. 1990) (considering whether

---

[3]This rule by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Nevertheless the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection as well.

statements of prosecutor were plain error despite lack of objection by defendant); *Anglin v. State*, 553 S.W.2d 616 (Tenn. Crim. App. 1977) (determining that in order to justify reversal on the basis of improper argument and remarks of counsel in absence of objection, it must affirmatively appear that the improper conduct affected the verdict to the prejudice of the defendant).

In exercising our discretion as to whether plain error review under Tennessee Rule of Criminal Procedure 52(b) is appropriate, the Tennessee Supreme Court has directed that we examine five factors, all of which must be present in a case in order for review under Rule 52(b) to be appropriate. These five factors are as follows: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing *Adkisson*, 899 S.W.2d at 641).

For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. *United States v. Olano*, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Federal Rule of Criminal Procedure 52(b)); *Adkisson*, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. *Olano*, 507 U.S. at 732-37.

In the case herein, we are not persuaded that Appellant has successfully carried her burden of persuasion in establishing a plain error claim. First, the record is not entirely clear as to what happened in the trial court. Although the manner in which these statements were made arguably makes it appear that the State improperly stated the law in regard to second degree murder, a full reading of the State's rebuttal argument arguably supports the conclusion that the intent of the entire argument was to argue to the jury that they could infer that Appellant intended to bring about the eventual result of her conduct by considering the nature of the crime. What is or is not improper rebuttal argument may very well vary depending on the context in which it was made. *See Judge v. State*, 539 S.W.2d 340, 343 (Tenn. Crim. App. 1976) (holding that propriety of prosecution comments must be evaluated in light of whether they were in direct response to defense argument rather than gratuitous); *see also Goltz*, 111 S.W.3d at 6. We note that the record does not contain the closing argument of counsel for Appellant or the State, thus we are unable to discern whether the statements of the prosecutor were made in response to statements made by counsel for Appellant in closing. It is Appellant's duty to provide a record that will allow for meaningful review upon appeal. *See* Tenn. R. App. P. 24(b). We cannot consider an issue unless the record contains a fair, accurate and complete account of what transpired below relevant to that issue. *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993).

Next it is impossible to say whether the complained of comments adversely affected the jury's verdict in this case and whether consideration of this issue is necessary to do substantial justice. It should be noted again that the burden of persuasion on appeal is on the appellant to demonstrate that the prosecutor's comments "more probably than not affected the judgment or would

result in prejudice to the judicial process." *Olano*, 507 U.S. at 732-37; Tenn. R. App. P. 36(b). Other than the bare assertion that the prosecutor's comments deprived the appellant of a fair trial because they directed the jury to consider her actions rather than the result of her conduct, there is no indication that the jury was unduly swayed from its duties as explained in the jury instructions issued by the trial court. In fact, the trial court instructed the jury that they were solely to consider whether Appellant intended the "result of her conduct." The jury is presumed to obey the instructions of the trial court. *State v. Harris*, 839 S.W.2d 54, 72 (Tenn. 1992). Moreover, we conclude that evidence of guilt was substantial enough that the verdict was not affected by the prosecutor's statements.

Finally, and perhaps most importantly, there is no excuse or explanation proffered by Appellant either in the record or in her brief on appeal as to the reason for her failure to object to the allegedly offending comments. Thus, we cannot say that the failure to object was for reasons other than tactical. Under these circumstances we are of the opinion that Appellant has failed to carry her burden of persuasion in convincing this Court to consider as plain error the propriety of the allegedly improper comments of the prosecutor in closing and rebuttal. This issue is therefore waived.

*Lesser Included Offense Instructions*

Appellant also complains on appeal that the trial court erred by failing to instruct the jury with misdemeanor reckless endangerment and assault as lesser included offenses. Specifically, Appellant contends that "because [Appellant's] defense was that she didn't intend the death, her

-18-

intent was more in line with assault or reckless endangerment" and that "this Court should find that it is unable to conclude beyond a reasonable doubt that the jury, if given this opportunity, would not have convicted [Appellant] of reckless endangerment or assault." The State, on the other hand, argues that Appellant was not entitled to have the trial court instruct the jury with misdemeanor reckless endangerment and assault and, in the alternative, that any error on the part of the trial court would be harmless because the jury convicted Appellant of the greatest offense charged, rejecting all other lesser included offenses.

Appellant was indicted with second degree murder. Appellant requested, in writing,[4] that the trial court charge the jury with the lesser included offenses of misdemeanor reckless endangerment and assault. The trial court determined that neither reckless endangerment nor assault were lesser included offenses of second degree murder and charged the jury with the lesser included offenses of voluntary manslaughter, reckless homicide and criminally negligent homicide.

Our review of a trial court's charge to the jury regarding lesser included offenses is de novo with no presumption of correctness. *State v. Moore*, 77 S.W.3d 132, 134 (Tenn. 2002). In *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), the following test for determining whether an offense is a lesser included offense of another was established by our supreme court:

_____

[4]We note that T.C.A. § 40-18-110 requires the defendant to request lesser included offense instructions in writing at trial in order to subsequently appeal a trial court's failure to instruct on such offenses. In *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006), the Tennessee Supreme Court determined that T.C.A. § 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." However, the court went on to note that appellate courts were not precluded from reviewing the issue sua sponte under the plain error doctrine. *Id*. at 230.

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Burns*, 6 S.W.3d at 466-67. An instruction on a lesser included offense must be given if the trial court, viewing the evidence most favorably to the existence of the lesser included offense, concludes (a) that "evidence exists that reasonable minds could accept as to the lesser-included offense," and (b) that the evidence "is legally sufficient to support a conviction for the lesser-included offense." *Id.* at 469. "If a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether the evidence supports it." *Id*. at 467. The failure to instruct the jury

on lesser included offenses requires a reversal for a new trial unless a reviewing court determines that the error was harmless beyond a reasonable doubt. *State v. Ely*, 48 S.W.3d 710, 727 (Tenn. 2001). In making this determination, the reviewing court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002).

This Court has concluded that in cases that involve the unlawful killing of a person, a defendant is entitled to a jury charge on lesser included offenses even though the lesser offenses may lack the element of the death of the victim. *State v. Paul Graham Manning*, No. M2002-00547-CCA-R3-CD2003 WL 354510, at *6 (Tenn. Crim. App., at Nashville, Feb. 14, 2003), *perm. app. denied*, (Tenn. Dec. 15, 2003). In *Manning*, this Court determined that aggravated assault and assault were lesser included offenses of first degree premeditated murder, stating:

> [F]irst degree premeditated murder is the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). An aggravated assault is committed, on the other hand, when the accused intentionally, knowingly, or recklessly causes serious bodily injury to another. *See id.* § 39-13-102(a)(1)(A), (a)(2)(A). Similarly, an assault is committed when one "[i]ntentionally, knowingly or recklessly causes bodily injury to another." *Id.* § 39-13-101(a)(1). The mens rea of intentional includes the mens reas of knowing and reckless. *See id.* § 39-11-301(a)(2). A killing certainly includes serious bodily injury (as well as "mere" bodily injury). Thus, all of the statutory elements of these forms of aggravated assault and assault are included

-21-

within the statutory elements of first degree premeditated murder, and they are

therefore lesser-included offenses under part (a) of the *Burns* test.

*Manning*, 2003 WL 354510, at \*6; *Contra State v. John C. Walker, III*, No. M2005-01432-CCA-RM-CD, 2005 WL 1798758, at \*10-11 (Tenn. Crim. App., at Nashville, July 28, 2005), *perm. app. denied*, (Tenn. Dec. 19, 2005) (determining that aggravated assault and assault are not lesser included offenses of first degree murder).[5]

We conclude that *Manning* is the better reasoned opinion and, therefore, find the same analysis applicable herein. As set forth above, second degree murder requires the knowing killing of another. T.C.A. §§ 39-13-201, -210(a). Misdemeanor reckless endangerment requires reckless "conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103. An assault is committed when one "[i]ntentionally, knowingly, or recklessly causes bodily injury to another." T.C.A. § 39-13-101(a)(1). According to T.C.A. § 39-11-301(a)(2), the mens rea of knowing, as required by second degree murder, includes the mens reas of intentional, knowing, and reckless, as required by misdemeanor reckless endangerment and assault. A killing certainly includes bodily injury as well as imminent danger of death or serious

---

[5]We acknowledge that in *Walker*, this Court lists several opinions that are cited as contradictory to the holding of *Manning*. *See State v. Mario C. Estrada*, No. M2002-00585-CCA-R3-CD, 2003 WL 1191186 (Tenn. Crim. App., at Nashville, Mar. 14, 2003), *rev'd on other grounds*, 133 S.W.3d 606 (Tenn. 2004); *State v. Renne Efren Arellano*, No. M2002-00380-CCA-R3-CD, 2003 WL 535927 (Tenn. Crim. App., at Nashville, Feb. 26, 2003), *rev'd on other grounds*, 133 S.W.3d 606 (Tenn. 2004); *State v. Randall White*, No. M2000-01492-CCA-R3-CD, 2002 WL 471166 (Tenn. Crim. App., at Nashville, Mar. 27, 2002); *State v. Joshua Lee Williams and Maurice Miguel Teague*, No. W2000-01435-CCA-R3-CD, 2001 WL 721056 (Tenn. Crim. App., at Jackson, Jun. 27, 2001), *perm. app. denied*, (Tenn. Oct. 29, 2001); *State v. Christopher Todd Brown*, No. M1999-00691-CCA-R3-CD, 2000 WL 262936 (Tenn. Crim. App., at Nashville, Mar. 9, 2000), *perm. app. denied,* (Tenn. Sept. 10, 2001). These cases, however, all deal with attempted homicides and assaults and, as such, are distinguishable from both *Manning* and the case at bar.

-22-

bodily injury. Thus, all of the statutory elements of misdemeanor reckless endangerment and assault are included within the statutory elements of second degree murder. Consequently, they are lesser included offenses under part (a) of the *Burns* test and the trial court erred when it failed to instruct the jury on these forms of misdemeanor reckless endangerment and assault.

"Failure to give a lesser-included offense instruction will result in reversal unless a reviewing court concludes beyond a reasonable doubt that the error did not affect the outcome of the trial." *State v. Allen*, 69 S.W.3d 181, 189 (Tenn. 2002). In this case, the trial court instructed the jury on the lesser included offenses of voluntary manslaughter, reckless homicide and criminally negligent homicide. Given all of these choices, the jury returned a verdict finding Appellant guilty of the greatest offense given, the indicted offense of second degree murder. In *Allen*, the court concluded that the failure to charge lesser included offenses is harmless error "when the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses." *Id.* (citing *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998)). Accordingly, Appellant is not entitled to relief on this issue.

*Sentencing*

Lastly, Appellant complains that the trial court imposed an excessive sentence. Specifically, she argues that the trial court found only one enhancement factor and four mitigating factors, and despite those findings, the trial court enhanced her sentence to twenty years. The State contends that under the 2005 amendments to the Tennessee Criminal Sentencing Reform Act, Appellant does not

have the right to "appeal a trial court's application of enhancement and mitigating factors to a sentence within the statutory range."

However, we need not reach the merits of this issue. It appears from the record that the trial court incorrectly sentenced Appellant pursuant to the 2005 amendments to the 1989 Sentencing Act. Portions of the 1989 Sentencing Act were amended in 2005 to reflect an advisory, non-mandatory sentencing scheme. *See e.g.*, T.C.A. §§ 40-35-114, -210. It was specifically noted that the amended provisions applied to sentencing for criminal offenses committed on or after June 7, 2005, but that offenses committed prior to June 7, 2005, would be governed by prior law. It was also noted that a defendant who is sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, may elect to be sentenced under the amended provisions of the Act by executing a waiver of ex post facto protections. *See* Pub. Acts, Ch. 353, § 18; T.C.A. § 40-35-210.

The record reflects that Appellant herein committed the offense of second degree murder prior to the effective date of these amended provisions. While Appellant could have elected to be sentenced pursuant to these amended provisions, the record on appeal does not contain a waiver showing that she did so. There was discussion at the sentencing hearing between counsel for Appellant and the trial court to the effect that Appellant wanted to be sentenced under "the new law" and that Appellant wished to "waive the sentencing under the old and go with the new [law]." There was even discussion about procuring a waiver of Appellant's ex post facto provisions for the record. However, no waiver is included in the record on appeal. Therefore, we must vacate the sentence and remand this case for resentencing.

On remand, the trial court should ensure that Appellant properly executes a waiver of her ex post facto protections if she wishes to be sentenced under the amended sentencing statutes. *See* T.C.A. § 40-35-210, Compiler's Notes; *see also State v. Ricky Lynn Payne*, No. M2006-00762-CCA-R3-CD, 2007 WL 2042494, at *12 (Tenn. Crim. App., at Nashville, Jul. 16, 2007) (remanding for resentencing under the old law or for proper execution of a waiver of ex post facto protections); *State v. Marco M. Northern*, No. M2005-02336-CCA-R3-CD, 2007 WL 1670333, at *18 (Tenn. Crim. App., at Nashville, Jun. 11, 2007) (remanding for resentencing under the old law or for proper execution of a waiver of ex post facto protections where defense counsel's oral statement that defendant elected to be sentenced under the new sentencing scheme was found to be an ineffectual attempt to waive the defendant's ex post facto protections); *State v. Bobby Dale Parris*, No. E2006-00893-CCA-R3-CD, 2007 WL 1498466, at *3-4 (Tenn. Crim. App., at Knoxville, May 23, 2007) (remanding for resentencing under the old law or for proper execution of a waiver of ex post facto protections); *State v. Timothy R. Bouton*, No. E2005-02294-CCA-R3-CD, 2006 WL 2373471, at *2 (Tenn. Crim. App., at Knoxville, June 27, 2006) (remanding for resentencing under the old law or for proper execution of a waiver of ex post facto protections).

*Conclusion*

For the foregoing reasons, Appellant's judgment of conviction is affirmed. Appellant's sentence is vacated and the matter is remanded to the trial court for resentencing in accordance with this opinion.

_____
JERRY L. SMITH, JUDGE